**Daniel Snyder, OSB No. 78385**
dansnyder@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

    Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **RANDI JONES,** as guardian ad litem for **BRANDY TUCHSCHERER**,<br><br>    Plaintiff,<br><br>    v.<br><br>**CITY OF PORTLAND,**<br><br>    Defendant. | Case No. 3:18-cv-01485<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**(Title II of ADA; Section 504 of Rehabilitation Act of 1973; pendent state laws)**<br><br>**JURY TRIAL REQUESTED** |

    Plaintiff Randi Jones, mother and guardian ad litem for Plaintiff Brandy Tuchscherer, brings this cause of action against Defendant City of Portland, and alleges as follows:

**I. NATURE OF THE ACTION**

    1.    This is an action for damages, including compensatory damages, equitable relief, including injunctive and declaratory relief, and attorneys' fees and costs, to redress violations of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*; violations of

PAGE 1 – COMPLAINT AND DEMAND FOR JURY TRIAL

Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq*., and violations pendent state laws.

## II. JURISDICTION

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

3. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), because the claim or a substantial part of the events giving rise to the claims herein occurred or arose in this Judicial District and all of the Defendants reside in this District.

## III. PARTIES

4. Brandy Tuchscherer (hereinafter "Plaintiff" or "Brandy Tuchscherer") is a citizen of the United States of America. At all times relevant, she was a resident of Washington County, Oregon. Brandy Tuchscherer is a qualified individual with a disability. Brandy Tuchscherer is developmentally delayed and on the autism spectrum, specifically summarized as a neurodevelopmental disorder, with no indication of clinically significant major mental health issues and has a learning disability.

5. Randi Jones is the biological mother of Brandy Tuchscherer. Randi Jones is a suitable person to serve as the guardian ad litem for her daughter, Brandy Tuchscherer. Brandy Tuchscherer consents to Randi Jones being appointed by the Court as her guardian ad litem.

6. Defendant City of Portland (hereinafter "Defendant" or "the City") is a political subdivision of the State of Oregon. The City has various bureaus or departments including the Fire Bureau. The City owns and operates fire stations in the City of Portland at various locations and employs firefighters. All City fire stations are publicly owned and are opens to members of the public.

7. The City is a recipient of federal financial assistance and subject to Section 504 of the Rehabilitation Act of 1973.

8. At all times material herein, Firefighter Robin McIvor, Fire Lieutenant Jason Andersen, Fire Chief Nate Takara, Andrea Barraclough, and John Doe police officers were

PAGE 2 – COMPLAINT AND DEMAND FOR JURY TRIAL

employees of Defendant City. All acts of Firefighter Robin McIvor, Fire Lieutenant Jason Andersen, Fire Chief Nate Takara, Andrea Barraclough, Vincent Bryson, and John Doe police officers, as alleged herein were within the course and scope of their employment with Defendant City.

9. On or about April 24, 2018, Plaintiff 's counsel, Daniel Snyder, served Defendant City with notice of tort claim by mailing said claim to Risk Management Services, Office of Management and Finance, City of Portland.

## IV. GENERAL FACTUAL ALLEGATIONS

10. More than twenty years ago, Brandy Tuchscherer began participating in dragon boat racing. She competed on teams with her mother, Randi Jones, as well as on teams for adults with developmental disabilities.

11. At all times material, Brandy Tuchscherer competed on a Wasabi Paddling Club team. Wasabi Paddling Club is a non-profit organization dedicated to the participation in, and promotion of, the National and International amateur sports of Dragon Boat racing. Brandy Tuchscherer competes with the "Special Dragons" team.

12. The City at Portland Fire Bureau Station 21, which has river rescue boats and a dock, has allowed dragon boat teams, including the Wasabi Paddling Club, access to its dock both to tie up the boats and for paddlers to board and leave the boats.

13. On about July 30, 2016, Wasabi Paddling Club put on an event for City firefighters. Brandy Tuchscherer's Wasabi team provided baked goods and casseroles for the firefighters.

14. While attending the July 30, 2016 event, Brandy Tuchscherer met and developed a friendship with a Portland fireman ("Firefighter C.M.") at Fire Station 21. Brandy Tuchscherer wanted to work and she told Firefighter C.M. that she had obtained a lower level Emergency Medical Technician (EMT) certification. Although she is disabled, Brandy Tuchscherer confided in this kind friendly firefighter that she her dream was to work in the EMT field. Firefighter C.M. became a friendly mentor for Brandy Tuchscherer. Firefighter C.M. said that he would assist

PAGE 3 – COMPLAINT AND DEMAND FOR JURY TRIAL

LAW OFFICES OF DANIEL SNYDER
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

Brandy Tuchscherer in applying for jobs. Firefighter C.M.'s kind mentoring of Brandy Tuchscherer increased her self-esteem.

15. In early 2017, Brandy Tuchscherer had an opportunity to be an intern with Project Search, a nationally acclaimed nine-month unpaid internship program of Albertina Kerr that provides employability training for individuals with intellectual and developmental disabilities. The program works in partnership with local businesses who commit to integrating the interns into the workplace culture. Brandy Tuchscherer discussed this internship opportunity with Firefighter C.M. Because Brandy Tuchscherer trusted Firefighter C.M., she told him in depth about her developmental and other disabilities. To Plaintiff's best knowledge, Firefighter C.M. shared his knowledge of her disability with "Firefighter Rob P.," another friendly, courteous Portland Firefighter. Firefighter Rob P. also became Brandy Tuchscherer's friend.

16. At all times Firefighter Rob P. acted in a fatherly and appropriate way toward her. At all times the behavior of Firefighter Rob P. and Firefighter C.M. toward Brandy Tuchscherer was perceived by her as positive and supportive of her disabilities.

17. In March, 2017, the Fire Bureau transferred Firefighter C.M. to Station 6 in Northwest Portland which has fireboat and rescue boat crews. In May 2017, Brandy Tuchscherer met with Firefighter C.M. They talked about when it would be a good time to visit Firefighter C.M. at Station 6 so as not to disrupt his training or be in his way. Freighter C.M. suggested that Brandy Tuchscherer meet with him every two weeks or more often as needed.

18. Late in May, 2017, Brandy Tuchscherer visited with Firefighter C.M. at Station 6. Brandy Tuchscherer shared information with Firefighter C.M. about her Wasabi Paddling Clubs' Special Dragons dragon boat race. She invited Firefighter C.M. to bring his family to watch her race during the Rose Festival races.

19. On June 28, 2017, Brandy Tuchscherer with the help of Firefighter Rob P., contacted Firefighter C.M. to let him know that her father, Calvin Tuchscherer, had passed away suddenly that morning and she may not make their prearranged meeting that Sunday.

PAGE 4 – COMPLAINT AND DEMAND FOR JURY TRIAL

20. Because Firefighter C.M. did not return her call, on June 29, 2017, Brandy Tuchscherer went to Station 6 to talk to her friend, Firefighter C.M., to let him know that she could not meet with him on Sunday as planned. A male, older crew member answered the door, found Brandy Tuchscherer in tears, and Brandy asked if Firefighter C.M. was busy. This firefighter kindly answered that he would go get him. Firefighter C.M. came to the door and his expression indicated that he knew something was upsetting Brandy Tuchscherer. Brandy Tuchscherer spoke up that her father had died the day before. While standing in front of the door, Firefighter C.M took a short time to collect his thoughts and responded with a few questions to learn what exactly had happened. Within a few minutes, Firefighter Robin McIvor, a female firefighter, pushed Firefighter C.M. aside. Firefighter McIvor then behaved in an outrageous manner toward Brandy Tuchscherer. Firefighter McIvor, who is larger than Brandy Tuchscherer, stood over her and lectured her using a directive voice in a very loud, irate manner using a very unpleasant tone. During her lecture, Firefighter McIvor crudely accused Brandy Tuchscherer of "hitting on" Firefighter C.M. Firefighter McIvor's insensitive accusation shocked Brandy Tuchscherer. Firefighter McIvor then said, "Have you thought about how 'this' looks to his wife?" Brandy Tuchscherer was very upset and said, "That is not my intention. He is a married man with four kids and a chocolate lab." Firefighter McIvor said, "You are only supposed to be here every two weeks. Why are 'you' here today?" Brandy Tuchscherer replied, "Forget it" turned around, and began walking to her car. Instead of letting Brandy Tuchscherer leave, Firefighter McIvor's shocking and outrageous behavior continued. Firefighter McIvor followed Brandy Tuchscherer to her car and loudly berated Brandy Tuchscherer for contacting Firefighter C.M. Tearfully, Brandy Tuchscherer explained to Firefighter Robin McIvor that her father had just died and she wanted to let Firefighter C.M. know that she would probably not be able to make it to their pre-arranged meeting that Sunday. Firefighter McIvor coldly replied, "That's got nothing to do with it. You have no reason to be here." Brandy Tuchscherer said, "I didn't just want to not show up for our meeting." Brandy Tuchscherer left Station 6 in tears.

PAGE 5 – COMPLAINT AND DEMAND FOR JURY TRIAL

21. On July 2, 2017, Firefighter C.M. surprised Brandy with a telephone call to apologize for missing her call. Firefighter C.M. offered condolences, asked about her father's death and asked how Brandy Tuchscherer's family was doing. After offering his condolences, Brandy Tuchscherer asked Firefighter C.M. when she could visit again. Firefighter C.M. gently replied that Brandy Tuchscherer could not visit him at Fire Station 6 again. Brandy Tuchscherer inquired why she could not visit Firefighter C.M. at Station 6. Firefighter C.M. told her because of Firefighter McIvor's reaction to Brandy Tuscherer's visit on June 29, 2017 and McIvor's opposition to Brandy Tuscherer coming to the station, the crew told Firefighter C.M. saying her visits were creating too much of a problem.

22. After her father's death, Brandy Tuchscherer found peace sitting on a public bench in the public area out front of Fire Station 21, even though Firefighter C.M. was no longer assigned there, watching the river. Brandy Tuchscherer typically sat on the bench before and after her dragon boat practices. Brandy Tuchscherer never went to the door at Station 21, nor did she bother any of the fire crew there.

23. On August 31, 2017, Firefighter C.M. and his Station 6 crew arrived in their engine at Station 21during the lunch hour to return "turn out" clothes. Coincidentally, Brandy Tuchscherer was sitting on the public bench outside of Station 21 looking at the river. Firefighter C.M. approached Brandy Tuchscherer and asked her how she was doing.  Firefighter C.M. remarked that he had received many text messages from others informing him that Brandy Tuchscherer was often seen sitting on this bench.  Obviously concerned, Firefighter C.M. offered to reach out to a sympathetic female firefighter to provide her with mentoring if she wanted him to do so.  Brandy Tuchscherer replied, "I'm fine." Firefighter C.M. said, "I don't believe you." Firefighter C.M, reiterated that he was going reach out to the female firefighter to arrange a meeting to mentor her. Firefighter C.M. reiterated again that he would like Brandy Tuchscherer to meet this person for help and she was to call/text at any time for his help.

PAGE 6 – COMPLAINT AND DEMAND FOR JURY TRIAL

24.     Firefighter C.M ended his August 31, 2017, conversation with Brandy Tuchscherer by saying that he anticipated transferring back to service at Station 21. Firefighter C.M. said that after he was transferred to Station 21, they would "catch up" with each other.

25.     After her August 31, 2017 conversation with Firefighter C.M., Brandy Tuchscherer reached out by text to Firefighter C.M that she would be uncomfortable talking to a different Portland Fire person. She sent the text in part because of the abuse from Firefighter McIvor. Brandy Tuchscherer texted that with her mother's help they were seeking a counselor for grief counseling and thanked him for his offer.

26.     On September 6, 2017, Brandy was sitting at the public bench in front of Station 21. Unknown to her, Firefighter C.M. and his Station 6 crew were at Station 21. Firefighter C.M. spotted Brandy Tuchscherer and loudly called out "Brandy" to get her attention. At first, Brandy Tuchscherer was afraid to acknowledged Firefighter C.M. since he had not yet been transferred back to Station 6. Firefighter C.M. called out "Brandy" two more times and she shyly responded "Hi" but did not to attempt to draw him over to her as he was on duty.

27.     On September 11, 2017, Brandy Tuchscherer attended a meeting with her mother at a law firm to learn details concerning her father's death. The meeting upset her.  Later that day, Brandy Tuchscherer texted Firefighter C.M. to say how upsetting the meeting had been and she heading down to Station 21 to sit on the bench. After a short minute when Brandy Tuchscherer sat down on the public bench, Firefighter Rob P. approached her and kindly inquired "It's late. What are you doing here?"  Brandy Tuchscherer answered that she was upset about her father and was just going to sit there for a few minutes.  During fall 2018, Firefighter Rob P. frequently visited with Brandy Tuchscherer when he spotted her sitting on the public bench.

28.     Beginning September 20, 2017, Brandy Tuchscherer received a series of contacts from and encounters  with City Fire Lieutenant Jason Andersen which gradually became more threatening in tone. On Friday, September 29, 2017, at 12:25 p.m., Fire Lieutenant Andersen called Brandy Tuchscherer and said that he was sitting in the driveway of her home, which is in

PAGE 7 – COMPLAINT AND DEMAND FOR JURY TRIAL

Beaverton, Washington County. Fire Lieutenant Andersen directed Brandy Tuchscherer to come home to meet him. Because her mother, Randi Jones, was at work, when Brandy Tuchscherer reached her home she was alone with Fire Lieutenant Andersen. On that day, Fire Lieutenant Andersen made several false accusations about Brandy Tuchscherer. Fire Lieutenant Andersen claimed that on June 17, 2017, she was knocking "20, 30, or 40 times at all the doors of all of fire stations," which Brandy Tuchscherer denied. During that meeting Brandy Tuchscherer asked Fire Lieutenant Andersen for the following accommodations: she asked Lieutenant Andersen to talk to her mother; and she asked Fire Lieutenant Andersen to have Firefighter C.M. contact her to explain what was happening. Fire Lieutenant Andersen said "no" to both of her requests.

29. On September 29, 2017, after finally leaving her home, Fire Lieutenant Andersen sent the first of several poorly written text messages to Brandy Tuchscherer. In the first text he wrote:

> Brandy. Once again. (sic)This has. (sic) Itching (sic) to do with intent or anyone being in trouble. This is about establishing boundaries at the workplace. (C.M.) does not think ill of you. It (sic) he does have a job to do at work. We are establishing those boundaries in a clear and understandable way. When I asked (C.M.) to speak with you he had no reservations and wanted to clarify what he should have (sic) prior to my involvement. But like I said. (sic) Some people are nice to the point of it being a fault sometimes. You seem like a nice person who doesn't mean any ill will. Stay positive and take care.

30. On the evening of October 3, 2017, Brandy Tuchscherer was sitting on the public bench when Station 21 got a call and Firefighter C.M. appeared with his crew heading down to the fireboats. When the crew returned Firefighter C.M. quickly called out to her "How are you doing Brandy?" Brandy Tuchscherer did not respond because of her September 29, 2017, encounter with Fire Lieutenant Andersen.

31. On October 11, 2017, Fire Lieutenant Andersen sent a second text to Brandy Tuchscherer. Anderson wrote that he had spoken with Firefighter C.M. at Station 6, and that Firefighter C.M. would be reaching out to Brandy Tuchscherer.

PAGE 8 – COMPLAINT AND DEMAND FOR JURY TRIAL

LAW OFFICES OF DANIEL SNYDER
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

32.     On October 15, 2017, because she had not heard further from Firefighter C.M., Brandy Tuchscherer texted Firefighter C.M. to meet in person to discuss "boundaries" instead of by phone. Firefighter C.M. did not respond. No meeting to discuss boundaries was ever made. Brandy Tuchscherer continued to sit on the bench in the public area near Station 21. No other employee of the Fire Bureau ever approached Brandy Tuchscherer while she was sitting there. Neither employees of the Fire Bureau nor any Portland police officer ever told Brandy Tuchscherer that she was prohibited from sitting in this public space. During fall 2018, no one told Brandy Tuchscherer that she was restricted from contact with Firefighter C.M.

33.     In early November 2017, Brandy Tuchscherer made some chocolate chip cookies, which were her father's favorite cookie, and she wanted to share these with the firefighters at Fire Station 6. She left two bags of cookies outside the fire station with a note to Firefighter C.M. explaining that the cookies were for everyone, for Firefighter C.M., and his family.

34.     On November 8, 2017, Fire Lieutenant Andersen sent a third text to Brandy Tuchscherer. He wrote: "I was contacted by Station 6. They informed me that you stopped by and left a note and cookies. Can you explain why this happened? We had an agreement that you would not visit a Station unless it was for official business and emergency or an invite from a member of PF&R? At this time, there is a trespass order in affect. (sic) If you choose to violate the order then you will be arrested." This text surprised and frightened Brandy Tuchscherer. This text was also inaccurate. Fire Lieutenant Andersen had not provided Brandy Tuchscherer with a trespass order and had not excluded Brandy Tuchscherer from the fire station which is public property.

35.     On or about November 8, 2017, Fire Lieutenant Andersen called Brandy Tuchscherer by telephone and told her that she could not visit Fire Station 6 for six months for any reason. Anderson said that after six months Brandy Tuchscherer would be allowed to visit the Fire Station 6 again to see Firefighter C.M.

36.     On November 18, 2017, Fire Lieutenant Andersen sent a fourth text to Brandy Tuchscherer accusing her of loitering, stalking, committing a crime, and threatened to have her

PAGE 9 – COMPLAINT AND DEMAND FOR JURY TRIAL

EMT license revoked. In that text, Fire Lieutenant Andersen wrote: "Until further notice you are hereby excluded from 'all' Portland Fire and Rescue properties. This includes fire stations, administrative offices, and logical facilities. The exceptions are the following: to report an emergency or crime. If you are suffering an emergency and require immediate assistance and 911 is not accessible or will result in unnecessary delay for aid. 'Loitering near' Portland Fire properties will be treated as stalking behavior. Violation of this exclusion will result in your arrest for criminal trespass. That is a misdemeanor crime and by ORS will need to be reported to the Oregon Health Authority and may result in revolution of your EMT certification. Nobody wants any of that to occur. Most of all me. But I need to look out for the safety and welfare of the members of this organization."

37.     On November 18, 2017, Brandy Tuchscherer sent a copy of Fire Lieutenant Andersen's text to Firefighter C.M. Brandy Tuscherer said that Fire Lieutenant Andersen previously wrote that Fire Lieutenant Andersen had asked Firefighter C.M. to reach out to her about "boundaries" and as of yet Firefighter C.M. had not done so. Firefighter C.M. did not respond.

38.     On November 19, 2017, Fire Lieutenant Andersen sent a fifth text to Brandy Tuchscherer threatening her with arrest. In that text, Fire Lieutenant Andersen wrote: "Brandy. You will not be dealing with C.M. directly during his employment hours unless his supervisors authorize it. My job is to protect the interests of the Fire Bureau and its members. At this time, there is a trespass order in effect. If you choose to violate the order then you will be arrested. The choice is yours. As I stated many times last night and during our previous conversation, this is not negotiable at this time. I am reaching out to additional members in order to seek a more agreeable resolution for all parties involved. But there are no guarantees. If you are in crisis over this issue then I would like to encourage you or assist you with getting professional help to assist you with working through this. I can empathize that this is a difficult time for you. I can provide you with resources to help if you need."

PAGE 10 – COMPLAINT AND DEMAND FOR JURY TRIAL

39. On November 19, 2017, Brandy Tuchscherer called Fire Lieutenant Andersen and told him that she did not understand what was going on. She said she did not understand how her friendship with Firefighter C.M., and her behavior, which was harmless, could result in a threat of arrest for criminal trespass. Brandy Tuchscherer told Fire Lieutenant Andersen that she had committed no crime to base a criminal trespass warning on. Fire Lieutenant Andersen was said that he had talked to Firefighter C.M. and said that Firefighter C.M. wanted no more contact with her. Brandy Tuchscherer was shocked and asked "did (Firefighter C.M.) really say that?" Fire Lieutenant Andersen avoided answering her question. Fire Lieutenant Andersen said "now that I am involved, Firefighter C.M. does not want any contact from you."

40. On November 20, 2017, Brandy Tuchscherer sent a text to Fire Lieutenant Andersen requesting a meeting with Fire Bureau Administration to request written instruction spelling out what the Fire Bureau was allowed to do and what she was not permitted to do.

41. Later that evening, on November 20, 2017, Brandy Tuchscherer received a call on her mobile telephone. The call was "No identification available." When Brandy Tuchscherer answered the call she was shocked that the call came from a Portland police officer who did not identify himself. The John Doe police officer said he represented the Police Bureau's Behavioral Health Unit. The John Doe policeman scolded Brandy Tuchscherer in a harsh and harassing tone. Brandy Tuchscherer became upset and tried to end the call. The John Doe policeman insisted that she set a date to talk with him by telephone, but Brandy Tuchscherer was too upset to do so. Brandy Tuchscherer immediately called her mother, Randi Jones. Randi Jones became alarmed that the police were considering Brandy Tuchscherer a threat and she contacted Fire Lieutenant Andersen. A short time later, Fire Lieutenant Jason Andersen called Randi Jones back to say the call was from Officer Nathan Bryson with the City Bureau of Police "Mental Health Division."

42. It took Randi Jones about a week to find and get in touch with Officer Nathan Bryson by telephone. When Officer Bryson finally connected with Randi Jones, Officer Bryson did not recognize Brandy Tuchscherer's name, or the situation. He put Randi Jones on hold to go

PAGE 11 – COMPLAINT AND DEMAND FOR JURY TRIAL

through his records. Officer Bryson came back to Randi Jones on the phone stating that he had no reference of calling Brandy Tuchscherer, nor did he have any record of Brandy Tuchscherer to refer to.

43.    On November 21, 2017, Fire Lieutenant Andersen sent a sixth text message, this time to Randi Jones, in which he wrote: "No forward movement with our administration. In case you are unaware: I had to cease communications with Brandy because of the lack of boundaries with her messages. I have many responsibilities and cannot be constantly interrupted with messages both on and off duty that do not contribute with this matter. I informed her that I would contact you in the future regarding this matter or to arrange any meetings."

44.    On November 29, 2017, at 4:12 p.m., Fire Lieutenant Andersen called Randi Jones and left a message. At 4:39 p.m., Randi Jones returned Fire Lieutenant Andersen's call. Fire Lieutenant Andersen said that he called Randi Jones because he received an upset voice message from Brandy Tuchscherer. Anderson played a voice mail message from Brandy Tuchscherer in which she said she was scared of these threats and that she stood across the street from Station 6 in May 2017, and no one had come out to her to say anything then.  Fire Lieutenant Alexander said he thought he heard "last night" in the message instead of "last May." Randi Jones told Fire Lieutenant Andersen that Firefighter C.M. never got in touch with Brandy Tuchscherer to discuss "boundaries." Fire Lieutenant Andersen said that Brandy Tuchscherer should have no future communication whatsoever with Firefighter C.M. unless Firefighter C.M. contacted her.  Fire Lieutenant Andersen then shocked Randi Jones when he said that he had put flyers up in all Portland fire stations with a picture of Brandy Tuchscherer. Fire Lieutenant Andersen said that under Brandy Tuchscherer's photo were instructions for anyone seeing her around the fire stations to either call Fire Lieutenant Andersen or to call the police.

45.    Fire Lieutenant Andersen later called Randi Jones attorney, Roscoe Nelson, and told him that because of Firefighter C.M.'s friendship with Brandy Tuchscherer, that Firefighter C.M. was being teased by his crewmates. Mr. Nelson, a former prosecuting attorney, questioned

PAGE 12 – COMPLAINT AND DEMAND FOR JURY TRIAL

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

the City of Portland's decision to threaten a disabled woman with criminal trespass. Fire Lieutenant Andersen ignorantly argued with Roscoe Nelson about criminal trespass and how a criminal trespass "order" is served. Roscoe Nelson then requested that Fire Lieutenant Andersen no longer have any contact either Brandy Tuchscherer or Randi Jones.

46. Randi Jones reached out to Firefighter C.M.'s friend, Firefighter Rob P who told Randi Jones that Brandy Tuchscherer was never a bother to him. Firefighter Rob P. said he enjoyed meeting with Brandy Tuchscherer and that he knew Firefighter C.M. felt the same way. Despite Mr. Nelson's direction to Fire Lieutenant Andersen that he have no further contact with Randi Jones or Brandy Tuchscherer, Anderson sent another text message to Randi Jones directly concerning Randi Jones' contact with Firefighter Rob P.

47. On December 1, 2017, Fire Lieutenant Andersen contacted Randi Jones directly and forbade Randi Jones from having any contact with Firefighter Rob P. Randi Jones requested to talk with his boss, Fire Investigator Chief Gary Boyles. Randi Jones then spoke to Chief Gary Boyles who told Randi Jones that he was interested in having a meeting with Brandy Tuchscherer and Randi Jones. Randi Jones requested that Chief Gary Boyles instruct Fire Lieutenant Andersen not to have any further contact with Brandy Tuchscherer and Randi Jones. Chief Gary Boyles said he accepted her "no-contact" request. Randi Jones left several follow-up messages for Chief Gary Boyles requesting a meeting, but Boyles failed to set a meeting.

48. In late January 2017, Randi Jones finally received a return call from Chief Gary Boyles who told Jones that he had decided not to have a meeting because Brandy Tuchscherer was "taking up too much of my administrative time." Chief Gary Boyles told Randi Jones that the Portland City Attorney had tried to convince Firefighter C.M. to sign a petition to obtain stalking order against Brandy Tuchscherer but Firefighter C.M. refused to cooperate with the City Attorney in signing a petition for stalking order. Chief Gary Boyles said that after talking to a Captain at Station 21, he learned that the Station 21 Captain did not view Brandy Tuchscherer as a

PAGE 13 – COMPLAINT AND DEMAND FOR JURY TRIAL

**LAW OFFICES OF DANIEL SNYDER**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

disturbance. Instead, Chief Gary Boyles said that the Station 21 Captain viewed Brandy Tuchscherer actions as either coming from an innocent motive or as unintentional.

49. On February 19, 2018, Firefighter C.M. sent Brandy Tuchscherer a note in which he wrote that she was a good person, he did not hate her, and that she had a lot to give in this world. Firefighter C.M. said he was being honest and didn't know how to help her with this situation. Firefighter C.M. told her to please listen to her mother and her disability caseworker, and to turn to them for support.

50. On February 21, 2018, Brandy Tuchscherer went to Hayden Island to visit one of her female friends. After leaving her friend's home, she drove past Fire Station 17, which was close to her friend's home. Upon passing the station, Brandy Tuchscherer saw that Firefighter C.M.'s truck was parked at Station 17, but the fire engine was missing. In the past, both Firefighter Rob P and Firefighter C.M. had told her the station fireboat was docked within the private property of Columbia Yacht Club. Brandy drove by the Columbia Yacht Club, Brandy Tuchscherer saw the fire engine parked on the street. Brandy Tuchscherer parked her car on a public street and took a walk along the public pathway. As she passed a locked gate at the Columbia Yacht Club, Brandy Tuchscherer saw firemen working on their boat. She did not attempt to enter the property or call out to Firefighter C.M. Just after Brandy Tuchscherer returned to her car, two John Doe Portland Police officers stopped Brandy Tuchscherer, and detained her for a long time. The policemen asked Brandy Tuchscherer to explain why she was there. The policeman then detained and arrested her, instructing her that she had to wait and not drive away while they made a call. Brandy Tuchscherer asked to leave and was told she could not leave. Plaintiff followed the instruction of the police and waited for almost an hour. Finally, Fire Lieutenant Andersen showed up and came over to Brandy Tuchscherer. At that moment Brandy Tuchscherer was on the telephone with her mother. Fire Lieutenant Andersen said to Brandy Tuchscherer "You have done nothing wrong today but I am going to write up a trespass notice and give that to you." Fire Lieutenant Andersen also condescendingly said, "I know you are 'smart' enough to realize why I am giving you this

PAGE 14 – COMPLAINT AND DEMAND FOR JURY TRIAL

trespass notice." Fire Lieutenant Andersen then handed Brandy Tuchscherer a written trespass notice and threated Brandy Tuchscherer with arresting her on the spot. However, Brandy Tuchscherer was not on City property that day nor did she trespass on private property.  Fire Lieutenant Andersen directed Brandy Tuchscherer to sign a form which he said he would take it back to the Portland Police and this would allow the Portland Police to place her under arrest.  Fire Lieutenant Andersen said that flyers with Brandy Tuchscherer face on them had also been placed in the North Precinct.

51. In February 2018, Fire Lieutenant Andersen called Randi Jones and said that the policeman who called Brandy Tuchscherer in November 2017, was Police Officer Vince Bryson.

52. The City of Portland, Office of the City Attorney, through Deputy City Attorney, Andrea Barraclough, then sent a letter to Roscoe Nelson, which included a Notice of Trespass for the incident on February 21, 2018. On March 12, 2018, Brandy Tuchscherer, Randi Jones, caseworker Mary Oliver, and Roscoe Nelson attended a meeting with Andrea Barraclough at Roscoe Nelson's office. Andrea Barraclough started the meeting by saying that she had met and talked with Firefighter C.M., who spoke highly of Brandy Tuchscherer. Andrea Barraclough said Firefighter C.M. was asked to sign a stalking order against Brandy Tuchscherer, but he definitely would not do this under any circumstance. Andrea Barraclough said Fire Marshall Nate Takara placed the trespass notice because he claimed that Brandy Tuchscherer was interrupting the operations of business for the lower level staff. Randi Jones said that Brandy Tuchscherer never stood in front of the engine doors nor parked anywhere that would obstruct the engines from leaving. Brandy Tuchscherer said that the few times in the past that Firefighter C.M. got a fire call while visiting with Brandy Tuchscherer, she immediately said goodbye to him and removed herself from the area. Andrea Barraclough also said that Brandy Tuchscherer's contacts with Firefighter C.M. are hurting Firefighter C.M.'s reputation at work, which she did not explain. Randi Jones brought up that Brandy Tuchscherer's Wasabi dragon boat team occasionally keeps the boats attached to the fire dock and uses the dock property to enter and exit for practices. The

PAGE 15 – COMPLAINT AND DEMAND FOR JURY TRIAL

trespass order prohibits Brandy Tuchscherer from coming onto the dock when the boats are at the fire dock. During the meeting, Brandy Tuchscherer said she felt like she has been treated like a criminal and that she has been tagged as possibly harmful to the fire crew with intent to commit a serious crime due to her disability. Brandy Tuchscherer pointed out that other citizens are often seen visiting fire stations and are not excluded.

## V. CAUSES OF ACTION

### CLAIM I – Discrimination on the Basis of Disability in violation of
### Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.)

53. Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

54. Title II of the Americans with Disabilities Act ("ADA") states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

55. Defendant is a "public entity" as that term is defined in 42 U.S.C. § 12131(1).

56. Defendant's Fire Bureau is a "public entity" as that term is defined in 42 U.S.C. § 12131(1).

57. Defendant's Police Bureau is a "public entity" as that term is defined in 42 U.S.C. § 12131(1).

58. Defendant's City Attorney's Office is a "public entity" as that term is defined in 42 U.S.C. § 12131(1).

59. Title II of the ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Plaintiff

PAGE 16 – COMPLAINT AND DEMAND FOR JURY TRIAL

**LAW OFFICES OF DANIEL SNYDER**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

is a qualified individual with a disability as that term is defined in § 12131(2). Plaintiff is substantially limited in major activities by her disability.

60. At all relevant times, Defendant was aware of Plaintiff's developmental, physical, mental, and emotional disabilities. Defendant regarded Plaintiff as having a disability.

61. Defendant violated 42 U.S.C. § 12132 and its accompanying regulations by knowingly and intentionally committing the following discriminatory acts or practices:

    (a)    Making false claims about Plaintiff;

    (b)    Making threatening contacts with Plaintiff;

    (c)    Excluded Plaintiff from public property;

    (d)    Denying Plaintiff contact with Firefighters C.M. and Rob P.L:

    (e)    Posting Plaintiff's photograph in fire stations, fire administration, police stations, and other public places:

    (f)    Arresting Plaintiff;

    (g)    Issuing a criminal trespass order against Plaintiff.

62. Defendant's conduct showed deliberate indifference to Plaintiff's rights.

63. As a result Defendant's unlawful actions, Plaintiff suffered and continues to suffer humiliation, distress, and impairment of her personal dignity and right to be free from discrimination or interference with her statutory rights.

64. Plaintiff is entitled to equitable relief and compensatory damages in an amount to be determined at trial. Plaintiff's damages are not expected to exceed $500,000. Plaintiff reserves the right to amend this amount prior to or during trial, as the evidence requires.

65. Plaintiff is entitled to a declaration that Defendant violated Title II of the ADA.

66. To the extent any amount awarded to Plaintiff is for damages occurring prior to the entry of judgment, Plaintiff is entitled to an award of pre-judgment interest at the legal rate from the date the damage occurred until the date of judgment.

PAGE 17 – COMPLAINT AND DEMAND FOR JURY TRIAL

LAW OFFICES OF DANIEL SNYDER
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

67.     Pursuant to 42 U.S.C. §§ 12205 and 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred.

68.     Plaintiff is entitled to post-judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## CLAIM II – Discrimination on the Basis of Disability in Violation of the Rehabilitation Act of 1973, Section 504 (29 U.S.C. § 701 *et seq*.)

69.     Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

70.     Plaintiff is a qualified individual with disabilities or handicap under the Rehabilitation Act because she is substantially limited in major activities.

71.     At all times material, Defendant was and is a recipient of federal financial assistance for its course, classes, programs, and activities.

72.     Defendant's actions and omissions as described above violated Plaintiff's rights under the Rehabilitation Act by excluding them or denying them the benefits of Defendant's course, class, programs, and activities solely because of her disability.

73.     Defendant's conduct showed deliberate indifference to Plaintiff rights because Defendant knew that Plaintiff had disabilities and Defendant arrested Plaintiff and issued a criminal trespass notice to Plaintiff.

74.     Plaintiff sustained economic and non-economic damages, including emotional distress, due to Defendant's violation of the Rehabilitation Act.

75.     Pursuant to 29 U.S.C. § 794(a), Plaintiff is entitled to compensation for her damages and an award of attorneys' fees and costs. Plaintiff's damages are not expected to exceed $500,000. Plaintiff reserves the right to amend this amount prior to or during trial, as the evidence requires.

## CLAIM III – False Arrest

76.     Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

**LAW OFFICES OF DANIEL SNYDER**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249

77. On February 21, 2018, as alleged herein, Defendant arrested Plaintiff by having its police officers detain her and refuse to allow her to leave. .

## VII. PRAYER FOR RELIEF

Plaintiff seeks judgment against Defendant, and requests that this Court enter an Order as follows:

A. Accepting jurisdiction of this case and declaring that Defendant violated Title II of the ADA;

B. Accepting jurisdiction of this case and declaring that Defendant violated Section 504 of the Rehabilitation Act of 1973;

C. A sum which will fully compensate Plaintiff for her non-economic damages in a sum that is just as determined by a jury;

D. A sum which will fully compensate Plaintiff for her economic damages in a sum that is just as determined by a jury;

E. Plaintiff's costs and disbursements incurred herein;

F. Plaintiff's attorneys' fees; and

G. For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

DATED: August 10, 2018.

LAW OFFICES OF DANIEL SNYDER

  /s/ Daniel Snyder
Daniel Snyder, OSB No. 783856
dansnyder@lawofficeofdanielsnyder.com
Carl Post, OSB No. 061058
carlpost@lawofficeofdanielsnyder.com
John Burgess, OSB No. 106498
johnburgess@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
Of Attorneys for Plaintiff

PAGE 19 – COMPLAINT AND DEMAND FOR JURY TRIAL

LAW OFFICES OF DANIEL SNYDER
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 | Fax (503) 241-2249